UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

WILLIAM J. SIMMONS, SR. as Administrator of the Estate Of WILLIAM J. SIMMONS, JR., WILLIAM J. SIMMONS, SR., Individually, and MARIE FE SIMMONS,
*Plaintiffs,*

vs.

CELESTE S. ROYCE, M.D., and SEACOAST AFFILIATED GROUP PRACTICE, INC., d/b/a WOMEN'S HEALTH CARE,
*Defendants.*

**COMPLAINT AND DEMAND FOR JURY TRIAL**

**JURISDICTION**

1. Jurisdiction is conferred by 28 U.S.C. 1332, as the parties/beneficiaries herein are of diverse citizenship (New Hampshire Plaintiffs and Massachusetts Defendants). The amount in controversy exceeds $75,000.00, exclusive of interests and costs. Venue resides in the Eastern Division of the United States District Court, District of Massachusetts.

**PLAINTIFFS/BENEFICIARIES**

2. The individual Plaintiff, as Administrator, and for his own claim of negligent infliction of emotional distress, and Beneficiary is William J. Simmons, Sr. ("Mr. Simmons"), the father of the late William J. Simmons, Jr. ("Baby Boy Simmons"), the duly appointed Administrator of the estate of William J. Simmons, Jr. He is a resident of Seabrook, Rockingham County, New Hampshire.

3. The individual Plaintiff, for her own claim of negligent infliction of emotional distress, and Beneficiary, Marie Fe Simmons ("Mrs. Simmons" or "Mother"), is the wife of William J. Simmons, Sr. and the mother of the late William J. Simmons, Jr. She is a resident of Seabrook, Rockingham County, New Hampshire.

4. Mr. and Mrs. Simmons are the only two beneficiaries of the Estate of William J. Simmons, Jr.

**DEFENDANTS**

5. The Defendant, Celeste S. Royce, M.D. (hereinafter the "Defendant Royce" or "Dr. Royce"), was at all times relevant to the Complaint, a physician licensed to practice medicine in the Commonwealth of Massachusetts and practicing the subspecialty of Obstetrics and Gynecology, who represented and held herself out to be skilled in the treatment of various illnesses and conditions, and, in particular, represented to the Plaintiffs that she was knowledgeable, competent and qualified to diagnose and treat the Plaintiffs and provide pre-natal care to the Mother and to Baby Boy Simmons at her practice at Women's Health Care located at 21 Highland Avenue, Newburyport, Essex County, Massachusetts at various times in or around February through September 2008.

6. The Defendant Seacoast Affiliated Group Practice, Inc., doing business as Women's Health Care (hereinafter "Women's Health Care") has the principle place of business at 25 Highland Ave., Newburyport, MA 01950 and a secondary place of business at 2 Water Street, Central Plaza, Haverhill, MA 01830, and upon information and belief is the successor to Women's Health Care, P.C. At all times relevant to his action Defendant Women's Health Care was in the business of providing medical care and medical services to patients, including such as

the Plaintiff Mrs. Simmons. At all times relevant to his action Dr. Royce was an agent, employee, officer and/or director of Women's Health Care.

**EVENTS**

7. At various times in or around February through September 2008, Mrs. Simmons received pre-natal care and treatment from the Defendants Celeste S. Royce, M.D. and Women's Health Care in Massachusetts. Defendants, individually and by and through her agents, servants and employees, negligently and carelessly, and without regard for the Plaintiff's health and well-being, treated Mrs. Simmons and her fetus in a manner which resulted in severe and permanent injury to Marie Fe Simmons and death of William J. Simmons, Jr., her child.

8. On February 4, 2008 Mrs. Simmons presented to Women's Health Care following a positive home pregnancy test.

9. On February 13, 2008 it was noted that the estimated date of gestation determined by estimated date of conception was set as 9 weeks 6 days SUN (the date of Mrs. Simmons last menstrual period was uncertain), and the estimated date of delivery was set for September 2, 2008.

10. Defendants only submitted Mrs. Simmons to one biophysical profile in connection with an ultrasound on August 12, 2008. The ultrasound of August 12, 2008 reported a gestational age of 39 weeks with an estimated date of delivery ("EDD") set at August 19, 2008. At this same visit, on August 12, 2008, the estimated fetal weight ("EFW") was 4514 grams, greater than 97th percentile. The report was copied to Dr. Royce. Although the medical records call for adjustment of the EDD based on subsequent ultrasound exams (as the last menstrual period

(LMP) date was very uncertain in this case) Defendants did not adjust the EDD in Mrs. Simmons' records to reflect the new date by this ultrasound.

11. Dr. Royce noted at the August 12, 2008 (one week before the new EDD per the ultrasound calculation) visit that the ultrasound showed 8/8 biophysical profile, fetal hydronephrosis, and an amniotic fluid index of 6.5 which had decreased from 11 on the last ultrasound. A repeat ultrasound was ordered on August 12, 2008, for August 15, 2008 to test both the amniotic fluid index and biophysical profile. Dr. Royce additionally noted that the patient needed a pediatric urology consult.

12. A consult was booked for August 15, 2008 (3 days later and 4 days before the new EDD) and noted at Children's Hospital, Boston. No biophysical profile was done in connection with the ultrasound at Children's Hospital, Boston on August 15, 2008, despite Dr. Royce's note/order/request although the ultrasound report, which was copied to Dr. Royce, reported the estimated fetal weight of 4256 grams (98th percentile).

13. No biophysical profile (BPP) or nonstress testing (NST) after the August 12, 2008 visit was ordered by Dr. Royce or obtained by Dr. Royce despite clear indications to do so, namely the hydronephrosis and the fact that the fetal weight was much greater than it should have been at the dates indicated i.e. "hydronephrosis and size greater than dates," and the need for which was specifically recognized in Dr. Royce's own August 12 note.

14. On August 20, 2008 (1 days after the new EDD), Dr. Royce noted in the medical records that Mrs. Simmons "needs repeat ultrasound for estimated fetal weight 4500 grams at last ultrasound. If confirmed considered offering primary C/S [cesarean section] for macrosomia" (large size fetus).

15. On August 25, 2008 (6 days after the new EDD) another ultrasound was carried out at Anna Jaques Hospital. This ultrasound, according to the records, taken by Deborah Ewing, was read/interpreted/reported by apparently Dr. Royce, but not until September 5, 2008 (two days after the demise of Baby Boy Simmons) According to the ultrasound report, it stated that the estimated fetal weight was 3737 grams (note: on August 12, 2008 (13 days earlier) EFW was 4514 grams and on August 15, 2008 (10 days earlier) the EFW was 4256, even taking into account that these are all estimate, it would appear that the fetus would have lost between 500 and 800 grams over the past 10-13 days, a finding that would require immediate response by the treating Ob/Gyn. As such, nonstress testing (NST) and a biophysical profile (BPP) should, consistent with the standard of care of an average Ob/Gyn in 2008, have been ordered and performed at this visit or within 24 hours.

16. Mrs. Simmons saw Dr. Royce prenatally for the last time on August 28, 2008 (now 9 days post the new EDD), the Thursday before Labor Day weekend, with Mr. Simmons present. At this time Dr. Royce noted “Estimated fetal weight 90th percentile on ultrasound but head circumference does not appear accurate.” Dr. Royce noted, “Discussed possible primary c/s if the patient goes post dates, as clinical Leopold’s estimated fetal weight is 4500. Good FM [fetal movement], no rom, bleeding, d/c or UCs,” was noted prenatally. The clinical EFW of 4500, which was more in line with the EFWs of August 12 and 15, should have placed even more doubt on the August 25 ultrasound by Dr. Royce, and a repeat ultrasound should have been ordered immediately.

17. On this Thursday encounter, Mr. and Mrs. Simmons were very concerned about the size of the pregnancy (fetus) and asked Dr. Royce whether or not a cesarean section should be immediately scheduled in light of the obvious large size of the pregnancy. The fetus, William

Simmons, Jr. (Baby Boy Simmons), was then viable at well 39 plus weeks. Dr. Royce advised the Mother that delivery was not then indicated. Dr. Royce would plan a confinement date following the Labor Day (September 1, 2008) holiday weekend and delivery was scheduled for Thursday, September 4, 2008, a week later (at gestation age of 40 plus weeks with a NOW viable fetus).

18. Post Labor Day weekend, between September 1 - 3, 2008 (4-6 days after the last prenatal encounter), Mrs. Simmons noted a change and decrease in fetal movement. On September 3, she was admitted to Anna Jaques Hospital where an ultrasound revealed fetal demise. Mrs. Simmons then had to give birth to her stillborn son via cesarean section, on that date, causing her severe emotional distress manifested by various ailments including, but not limited to, sadness, sleeplessness, fatigue, abdominal symptoms, and headache.

19. Mr. Simmons had to witness the birth of his stillborn son, causing him severe emotional distress manifested by various ailments including, but not limited to, sadness, sleeplessness, fatigue, abdominal symptoms, and headache.

20. Baby Boy Simmons was delivered on September 3, 2008, deceased, with a birth weight of 4965 grams or 10 lbs, 15 oz.

21. Dr. Royce deviated from the standard of care of an average qualified obstetrician practicing in 2008 when she failed to order and to obtain a timely biophysical profiles and timely nonstress testing in the face of known macrosomia and hydronephrosis. She further fell below the requisite standard of care when she failed to advise and schedule a timely delivery of this mature fetus on or immediately after August 28, 2008 (Thursday), when the fetus was viable and healthy.

22. Appropriate prenatal testing would have revealed fetal distress. This prenatal testing was not timely ordered/accomplished by Dr. Royce, although it is the accepted standard of care. Put another way, prenatal testing and timely delivery on or immediately after August 28, 2008 (before Labor Day of 2008) would have, to a reasonable degree of medical certainty, avoided the death of Baby Boy Simmons.

23. This action is brought to recover for the Wrongful Death of William J. Simmons, Jr., for the benefit of his parents, including Punitive Damages, because of gross negligence and negligence by Dr. Royce, pursuant to M.G.L. c. 229 § 1 et. seq., against the Defendants, Celeste S. Royce, M.D., and her employer, Women's Health Care.

24. As a direct and proximate result of negligent and grossly negligent prenatal evaluation, care and treatment by the Defendants, Mr. and Mrs. Simmons suffered severe and permanent physical, emotional, and mental injuries.

25. Said injuries and the death of Baby William were a substantial proximate result of the carelessness, unskillfulness, negligence and improper evaluation, prenatal care and treatment by the Defendants, Celeste S. Royce, M.D. and Women's Health Care. Said prenatal care by Dr. Royce was grossly negligent.

**COUNT I – WRONGFUL DEATH – NEGLIGENCE, G.L. c. 229 § 2**
**William J. Simmons, Sr., as Administrator v. Celeste S. Royce, M.D.**

26. The Plaintiffs repeat and reaver the allegations set forth in Paragraphs 1 through 25 above as if expressly set forth herein and further state and aver as follows:

27. In and around February through September 2008, Mrs. Simmons and her fetus submitted themselves to the care and treatment of the Defendant Celeste S. Royce, M.D.

28. Dr. Royce owed a duty of care to Mrs. Simmons and her fetus as their treating Ob/Gyn physician.

29. Dr. Royce breached said duty when she negligently and carelessly, and without regard for the fetus's health and well-being, treated Mrs. Simmons and her baby in a manner which resulted in the baby's death on September 3, 2008.

30. The death of Baby William J. Simmons, Jr. was the direct and proximate result of the carelessness, unskillfulness, negligence, and improper care and treatment by Celeste S. Royce, M.D. including but not limited to the following:

a) her misrepresentations to Mrs. Simmons that she was knowledgeable, skillful and competent to diagnose and treat the Plaintiffs at various times in or around February through September 2008.

b) her failure to adequately and properly diagnose the medical condition of Mrs. Simmons and her fetus at various times in or around February through September 2008, and her failure to properly treat or refer for treatment of said condition.

c) her failure to recognize, or to have the knowledge to recognize, her inability and lack of skill to treat Mrs. Simmons and her fetus when she knew or should have known of the foreseeable consequences of her inability and failure to properly and skillfully provide the Plaintiffs with acceptable medical care and treatment.

d) her failure to possess and exercise that degree of skill, training and care as is possessed and exercised by an average qualified member of the medical profession practicing the specialty of Obstetrics & Gynecology.

e) her failure to inform and to warn of the risks involved in or associated with Mrs. Simmons' and her fetus's condition and the risks associated with her recommended approach to the treatment of said condition.

**WHEREFORE**, the Plaintiff, William J. Simmons, Sr., as Administrator of the Estate of William J. Simmons, Jr., prays for judgment against the Defendant, Celeste S. Royce, M.D., for compensatory damages, as delineated in G.L. c. 229, § 2, together with interest, attorney's fees and costs.

**COUNT II – WRONGFUL DEATH, GROSS NEGLIGENCE**
**G.L. c. 229 § 2 – Punitive Damages**
**William J. Simmons, Sr. as Administrator v. Celeste S. Royce, M.D.**

31. The Plaintiffs repeat and reaver the allegations set forth in Paragraphs 1 through 25 above as if expressly set forth herein and further state and aver as follows:

32. In and around February through September 2008, Mrs. Simmons and her fetus submitted themselves to the care and treatment of the Defendant Celeste S. Royce, M.D.

33. Dr. Royce owed a duty of care to Mrs. Simmons and her fetus as their treating Ob/Gyn physician.

34. Dr. Royce breached said duty when she grossly negligently and carelessly, and without regard for the fetus's health and well-being, treated Mrs. Simmons and her baby in a manner which resulted in the baby's death on September 3, 2008.

35. The death of Baby William J. Simmons, Jr. was the direct and proximate result of the gross negligence, carelessness, unskillfulness, and improper care and treatment by Celeste S. Royce, M.D. including but not limited to the following:

a) her misrepresentations to Mrs. Simmons that she was knowledgeable, skillful and competent to diagnose and treat the Plaintiffs at various times in or around February through September 2008.

b) her failure to adequately and properly diagnose the medical condition of Mrs. Simmons and her fetus at various times in or around February through September 2008, and her failure to properly treat or refer for treatment of said condition.

c) her failure to recognize, or to have the knowledge to recognize, her inability and lack of skill to treat Mrs. Simmons and her fetus when she knew or should have known of the foreseeable consequences of her inability and failure to properly and skillfully provide the Plaintiffs with acceptable medical care and treatment.

d) her failure to possess and exercise that degree of skill, training and care as is possessed and exercised by an average qualified member of the medical profession practicing the specialty of Obstetrics & Gynecology.

e) her failure to inform and to warn of the risks involved in or associated with Mrs. Simmons and her fetus's condition and the risks associated with her recommended approach to the treatment of said condition.

**WHEREFORE**, the Plaintiffs, William J. Simmons, Sr., as Administrator of the Estate of William J. Simmons, Jr., prays for judgment against the Defendant, Celeste S. Royce, M.D., including punitive damages, to be determined by a jury, as delineated in G.L. c. 229, § 2, together with interest, attorney's fees and costs.

**COUNT III – WRONGFUL DEATH,**
**CONSCIOUS PAIN AND SUFFERING, G.L. c. 229, § 6**
**William J. Simmons, Sr., as Administrator vs. Celeste S. Royce, M.D.**

36. The Plaintiffs repeat and reaver fully herein the allegations contained in paragraphs 1 through 35 above as if each were set forth here in its entirety.

37. As a direct and proximate result of the negligence and carelessness of the Defendants, its agents, servants and employees, Baby Boy Simmons sustained serious personal injuries in utero including conscious pain and suffering of mind and body.

**WHEREFORE** plaintiff, William J. Simmons, Administrator demands judgment against the defendant Celeste S. Royce, M.D. in an amount just and appropriate together with interest and costs.

**COUNT IV - NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**
**William J. Simmons, Sr., Individually vs. Celeste S. Royce, M.D.**

38. The Plaintiffs repeat and reaver the allegations set forth in Paragraphs 1 through 37 above as if expressly set forth herein and further state and aver as follows:

39. A Physician-Patient relationship was established between Mrs. Simmons and her fetus and Defendant Royce, giving rise to Defendant Royce's affirmative duty to care for Mrs.

Simmons and her fetus during her pregnancy, to warn of potential risks involved in her medical care, and to rescue Mrs. Simmons and her fetus from known dangers in her medical care.

40. At various times in or around February through September 2008, Defendant Royce negligently, carelessly, or unskillfully participated in the treatment of Mrs. Simmons. As a direct and proximate result of the negligence, carelessness, and lack of skill of Defendant Royce, plaintiff Marie Fe Simmons was caused to deliver a stillborn baby, resulting in permanent damages.

41. Plaintiff William J. Simmons, Jr. was caused to witness his stillborn son, born via Caesarean section, being forcefully pulled from his wife's body, and this resulted in physical and emotional pain to William J. Simmons that manifested itself in various ailments including, but not limited to, sadness, sleeplessness, fatigue, abdominal symptoms, and headache.

**WHEREFORE**, the Plaintiff, William J. Simmons, Individually, prays for judgment against the Defendant, Celeste S. Royce, M.D. for damages together with interest, attorney's fees and costs.

**COUNT V - NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**
**Marie Fe Simmons vs. Celeste S. Royce, M.D.**

42. The Plaintiffs repeat and reaver the allegations set forth in Paragraphs 1 through 37 above as if expressly set forth herein and further state and aver as follows:

43. A Physician-Patient relationship was established between Mrs. Simmons and her fetus and Defendant Royce, giving rise to Defendant Royce's affirmative duty to care for Mrs. Simmons and her fetus during her pregnancy, to warn of potential risks involved in her medical care, and to rescue Mrs. Simmons and her fetus from known dangers in their medical care.

44. At various times in or around February through September 2008, Defendant Royce negligently, carelessly, or unskillfully participated in the treatment of Mrs. Simmons. As a direct and proximate result of the negligence, carelessness, and lack of skill of Defendant Royce, plaintiff Marie Fe Simmons was forced to undergo a Cesarean section by which her stillborn son was forcefully pulled from her uterus. This resulted in physical and emotional pain to Marie Fe Simmons that manifested itself in various ailments including, but not limited to, sadness, sleeplessness, fatigue, abdominal symptoms, and headache.

**WHEREFORE**, the Plaintiff, Marie Fe Simmons, prays for judgment against the Defendant, Celeste S. Royce, M.D. for damages together with interest, attorney's fees and costs.

**COUNT VI - (VICARIOUS LIABILITY)**
**William J. Simmons, as Administrator v. Women's Health Care**

45. The Plaintiffs repeat and reaver the allegations set forth in Paragraphs 1 through 44 above as if expressly set forth herein and further state and aver as follows:

46. A Physician-Patient relationship was established between Mrs. Simmons and her fetus and Defendant Royce, and Defendant Royce had an affirmative duty to care for Mrs. Simmons and her fetus, to warn of potential risks involved in her medical care, and to rescue Mrs. Simmons and her fetus from known dangers in their medical care.

47. Celeste S. Royce, M.D., in her capacity as an officer, director, managing agent, supervisor or employee and acting within the scope of her employment as an agent of Women's Health Care deviated and fell below the standard care of an average qualified OB/GYN in 2008 in the Commonwealth of Massachusetts where her actions, conduct, and omissions were grossly negligent and careless.

48. Through the negligent care of Defendant Royce, acting as an employee or agent of Women's Health Care, Defendant Royce and Womens' Health Care breached their affirmative duty to Mrs. Simmons and her fetus.

49. As a proximate cause of this negligent and grossly negligent conduct by Women's Healthcare's agent, Baby Boy Simmons was still born.

**WHEREFORE**, the plaintiff, William J. Simmons, as Administrator of the Estate of Baby Boy Simmons, prays for judgment in his favor against the defendant, Women's Health Care for damages pursuant to G.L. c. 229 § 2 and § 6, common law damages, and punitive damages to be determined by a jury, together with interest, attorney's fees and costs.

**COUNT VII – (VICARIOUS LIABILITY)**
**William J. Simmons, Individually v. Women's Health Care**

50. The Plaintiffs repeat and reaver the allegations set forth in Paragraphs 1 through 49 above as if expressly set forth herein and further state and aver as follows:

51. A Physician-Patient relationship was established between Mrs. Simmons and her fetus and Defendant Royce, and Defendant Royce had an affirmative duty to care for Mrs. Simmons and her fetus, to warn of potential risks involved in her medical care, and to rescue Mrs. Simmons and her fetus from known dangers in their medical care.

52. Celeste S. Royce, M.D., in her capacity as an officer, director, managing agent, supervisor or employee and acting within the scope of her employment as an agent of Women's Health Care deviated and fell below the standard care of an average qualified OB/GYN in 2008 in the Commonwealth of Massachusetts where her actions, conduct, and omissions were grossly negligent and careless.

53. Through the negligent care of Defendant Royce, acting as an employee or agent of Women's Health Care, Defendant Royce breached her affirmative duty to Mrs. Simmons and her fetus.

54. As a proximate cause of this negligent and grossly negligent conduct by Women's Healthcare's agent, Baby Boy Simmons was still born.

**WHEREFORE**, the plaintiff, William J. Simmons, Individually, prays for judgment in his favor against the defendant, Women's Health Care for damages pursuant to G.L. c. 229 § 2 and § 6, common law damages, and punitive damages, to be determined by a jury, together with interest, attorney's fees and costs.

**COUNT VIII – (VICARIOUS LIABILITY)**
**Marie Fe Simmons v. Women's Health Care**

55. The Plaintiffs repeat and reaver the allegations set forth in Paragraphs 1 through 54 above as if expressly set forth herein and further state and aver as follows:

56. A Physician-Patient relationship was established between Mrs. Simmons and her fetus and Defendant Royce, and Defendant Royce had an affirmative duty to care for Mrs. Simmons and her fetus, to warm of potential risks involved in her medical care, and to rescue Mrs. Simmons and her fetus from known dangers in their medical care.

57. Celeste S. Royce, M.D., in her capacity as an officer, director, managing agent, supervisor or employee and acting within the scope of her employment as agent of Women's Health Care deviated and fell below the standard care of an average qualified Ob/Gyn in 2008 in the Commonwealth of Massachusetts where her actions, conduct, and omissions were grossly negligent and careless.

58. Through the negligent care of Defendant Royce, acting as an employee or agent of Women's Health Care, Defendant Royce breached her affirmative duty to Mrs. Simmons and her fetus.

59. As a substantially proximate cause of this grossly negligent conduct, Baby Boy Simmons was still born.

**WHEREFORE**, the plaintiff, Marie Fe Simmons, prays for judgment in her favor against the defendant, Women's Health Care, for damages pursuant to G.L. c. 229 § 2 and § 6, common law damages, and punitive damages, to be determined by a jury, together with interest, attorney's fees and costs.

**COUNT IX – FAILURE OF INFORMED CONSENT**
**William J. Simmons, Sr., as Administrator**
**vs. Celeste S. Royce, M.D. & Women's Health Care**

60. The Plaintiffs repeat and reaver fully herein the allegations contained in paragraphs 1 through 59 above as if each were set forth here in its entirety.

61. At various times in or around February through September 2008, average qualified members of the medical profession practicing the Defendants' specialty of Obstetrics & Gynecology knew or should have known of the risks, potential consequences and alternatives to the Defendants' evaluation, diagnosis and treatment of the Plaintiffs.

62. At various times in or around February through September 2008, the Defendants knew or should have known of the risks, potential consequences and alternatives to their approach to the evaluation and treatment of the Plaintiffs.

63. At various times in or around February through September 2008, the Defendants failed to inform the Plaintiffs of the alternatives to and risks and potential consequences of Dr. Royce's approach to the evaluation, diagnosis and treatment of the Plaintiffs.

64. If the Defendants had informed the Plaintiff mother of the alternatives to and risks and potential consequences of Dr. Royce's approach to the evaluation, diagnosis and treatment of their medical condition, neither the Plaintiffs nor a reasonable person in their position would have elected Defendant Celeste S. Royce's approach to evaluation, diagnosis and treatment.

65. The alternatives to and the risks and potential consequences of the Defendant Celeste S. Royce's approach to evaluation, diagnosis and choice of treatment were material to a decision by the Plaintiffs and a reasonable person in their position as to whether to undergo the Defendant Celeste S. Royce's choice of treatment.

66. The injuries described above were the direct and proximate result of the failure by Defendants to obtain the informed consent of the Plaintiff mother.

**WHEREFORE**, the Plaintiff, William J. Simmons, Sr., as Administrator of the Estate of William J. Simmons, Jr., prays for judgment against the Defendants, Celeste S. Royce, M.D. and Women's Health Care for compensatory damages as delineated in G.L. c. 229, § 2 and § 6 together with interest, attorney's fees and costs.

**COUNT X – FAILURE OF INFORMED CONSENT**
**Marie Fe Simmons vs. Celeste S. Royce, M.D & Women's Health Care**

67. The Plaintiffs repeat and reaver fully herein the allegations contained in paragraphs 1 through 66 above as if each were set forth here in its entirety.

68. At various times in or around February through September 2008, average qualified members of the medical profession practicing the Defendants' specialty of Obstetrics & Gynecology knew or should have known of the risks, potential consequences and alternatives to the Defendants' evaluation, diagnosis and treatment of the Plaintiffs.

69. At various times in or around February through September 2008, the Defendants knew or should have known of the risks, potential consequences and alternatives to their approach to the evaluation and treatment of the Plaintiffs.

70. At various times in or around February through September 2008, the Defendants failed to inform the Plaintiffs of the alternatives to and risks and potential consequences of Dr. Royce's approach to the evaluation, diagnosis and treatment of the Plaintiffs.

71. If the Defendants had informed the Plaintiff mother of the alternatives to and risks and potential consequences of Dr. Royce's approach to the evaluation, diagnosis and treatment of their medical condition, neither the Plaintiff mother nor a reasonable person in her position would have elected Defendant Celeste S. Royce's approach to evaluation, diagnosis and treatment of the mother's pregnancy.

72. The alternatives to and the risks and potential consequences of the Defendant Celeste S. Royce's approach to evaluation, diagnosis and choice of treatment were material to a decision by the Plaintiffs and a reasonable person in their position as to whether to undergo the Defendant Celeste S. Royce's choice of treatment.

73. The injuries described above were the direct and proximate result of the failure by Defendants to obtain the informed consent of the Plaintiff mother.

**WHEREFORE**, the Plaintiff, Marie Fe Simmons, prays for judgment against the Defendants, Celeste S. Royce, M.D. and Women's Health Care for compensatory damages as delineated in G.L. c. 229, § 2 and § 6 together with interest, attorney's fees and costs.

**PLAINTIFFS CLAIM TRIAL BY JURY ON ALL COUNTS**

Respectfully submitted,
The Plaintiffs,
By Their Attorneys,

/s/ Frederic N. Halstrom
_______________________________

Frederic Halström, Esq. BBO #218420
Halström Law Offices, P.C.
P.O. Box 121203 – Lafayette Station
Boston, MA 02112-1203
617-262-1060 (T)
617-426-4791 (F)
office@halstrom.com

Dated: August 12, 2011